IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 22-cv-00406-CNS-STV

ABDU-LATIF KAZEMBE ABU-NANTAMBU-EL,

     Plaintiff,

v.

COLORADO DEPARTMENT OF CORRECTIONS, et. al.

     Defendants.

---

## MOTION TO DISMISS AMENDED COMPLAINT IN PART
## PURSUANT TO FED. R. CIV. P. 12(B)(6)

---

Defendants Jeff Long, Jessica Dorcey, Matthew Barnes, Braden Piel, David Custer, Robert Dick, Tiffany Bedsaul and Launa Coonrod-Brown (the "CDOC Defendants"), through the Colorado Attorney General, respectfully move to dismiss Plaintiff Abdu-Latif Abu-Natambu-El's Amended Complaint at ECF No. 14 in part, pursuant to Fed. R. Civ. P. 12(b)(1) and 12(b)(6). CDOC Defendants state as follows in support thereof:

## I.     CERTIFICATE OF CONFERRAL

Pursuant to D.C.COLO.LCivR.7.1(b)(1) and (2), conferral with Mr. Abu-Natambu-El is not required prior to filing this motion, as he is an unrepresented prisoner and this is a motion brought under Fed. R. Civ. P. 12.

## II.   INTRODUCTION

Mr. Abu-Natambu-El's is a *pro se* litigant who is presently serving a sentence in the Colorado Department of Corrections ("CDOC") arising out of convictions in 12CR2275, Jefferson County. He is currently incarcerated at the Fremont Correctional Facility ("FCF").

Mr. Abu-Natambu-El alleges that on December 23, 2019, while housed at CDOC's Sterling Correctional Facility ("SCF"), the Colorado Supreme Court reversed his convictions in 12CR2275, Jefferson County. ECF No. 14, p. 5.  However, Mr. Abu-Natambu-El alleges that he was not released from CDOC custody until February 14th, 2020, when he was returned to Jefferson County as a pre-trial detainee. *Id*.

Mr. Abu-Natambu-El alleges he became the target of CDOC Defendants and other inmates because of his race, Muslim religion and LGBTQ sexual orientation. *Id.* For example, Mr. Abu-Natambu-El alleges correctional officers would open his cell, or refuse to lock his cell, which allowed other inmates to steal Mr. Abu-Natambu-El's property. *Id.* at p, 10. Mr. Abu-Natambu-El also alleges that he was threatened with a knife by an inmate named Martell White sometime in September of 2019. *Id.* at pp. 10-11. Mr. Abu-Natambu-El further alleges that he was repeatedly threatened by an inmate named Joshua Cummings and, on February 11, 2020, inmate Cummings attacked and stabbed Mr. Abu-Natambu-El ten times with a homemade prison knife. *Id.* at pp. 14-15.

This Court reviewed the Amended Complaint pursuant to 28 U.S.C. § 1915 and allowed Mr. Abu-Natambu-El's Fourteenth Amendment due process and equal protection claims, the

Eighth Amendment claims, and the claims under §§1985 and 1986 to move forward. CDOC

Defendants now move to dismiss those claims in part.[1] *See* ECF No. 18, p. 12.

### III. STANDARD OF REVIEW

**A. Fed. R. Civ. P. 12(b)(6):**

The Federal Rules of Civil Procedure provide that a court may dismiss a complaint for

"failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). To state a

claim, a plaintiff must plainly and adequately describe the specific legal right allegedly violated

and all relevant facts, including what each named defendant did to him, when each defendant did

it, and how the defendant's actions harmed him. *Nasious v. Two Unknown B.I.C.E. Agents*, 492

F.3d 1158, 1163 (10th Cir. 2007). To withstand a motion to dismiss, a complaint "must contain

sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"

*Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (*quoting Bell Atlantic Corp. v. Twombly*, 550 U.S.

544, 570 (2007)).

For purposes of a motion to dismiss pursuant to Rule 12(b)(6), the court must accept all

well-pleaded factual allegations in the complaint as true and resolve all reasonable inferences in

---

[1]CDOC Defendants do not seek dismissal of Mr. Abu-Natambu-El's Eighth Amendment claim against all CDOC Defendants that they failed to protect him from the February 11, 2020, attack by inmate Cummings in this Motion to Dismiss. CDOC Defendants will seek leave to file an early motion for summary judgment on this and all other claims asserted in the Amended Complaint. Mr. Abu-Natambu-El admits that he failed to exhaust administrative remedies, which is fatal to all his claims under the Prisoner Litigation Reform Act. ECF No. 14, p. 23; *see also Aquilar-Avellaveda v. Terrell*, 478 F. 3d 1223, 1225 (10th Cir. 2007) (a defense that plaintiff failed to exhaust administrative remedies under the PLRA is an affirmative defense that usually must be considered under Rule 56 for summary judgment, rather than a Rule 12(b)(6) motion).

the plaintiff's favor. *Morse v. Regents of the Univ. of Colo.*, 154 F.3d 1124, 1126-27 (10th Cir. 1998). Plausibility requires more than mere conceivability. *See Khalik v. United Air Lines*, 671 F.3d 1188, 1190 (10th Cir. 2012). While detailed factual allegations are not required, a plaintiff must assert "more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Iqbal*, 556 U.S. at 678. "Factual allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. A complaint will not suffice if it tenders "naked assertion[s]" devoid of "further factual enhancement" or "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 555, 557). The ultimate duty of the Court is to "determine whether the complaint sufficiently alleges facts supporting all the elements necessary to establish an entitlement to relief under the legal theory proposed." *Forest Guardians v. Forsgren*, 478 F.3d 1149, 1160 (10th Cir. 2007).

**B.  *Pro Se* Complaints:**

A court must construe a *pro se* complaint liberally. *Gaines v. Stenseng*, 292 F.3d 1222, 1224 (10th Cir. 2002). However, the court has no duty to assume the role of advocate for a *pro se* plaintiff, nor will it supply additional facts, nor construct a legal theory for him. *See Peterson v. Shanks*, 149 F.3d 1140, 1143 (10th Cir. 1998) (internal citations omitted).

**C.  Judicial Notice**

"Courts must consider the complaint in its entirety, as well as other sources courts ordinarily examine when ruling on 12(b)(6) motions to dismiss, in particular, documents incorporated into the complaint by reference, and matters of which a court may take judicial notice." *Tellabs, Inc., v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 323 (2007). A court can take

judicial notice of documents and docket materials filed in other courts without converting a motion to dismiss into a motion for summary judgment. *See, Brickert v. Deutsche Bank Nat'l Tr. Co.,* 380 F. Supp. 3d 1127, 1133 n.1 (D. Colo. 2019) (citing *Stan Lee Media, Inc. v. Walt Disney Co.,* 774 F. 3d 1292, 1298 n.2 (10th Cir. 2014)); *see also GFF Corp. v. Associated Wholesale Grocers, Inc.*, 130 F.3d 1381,1385 (10th Cir. 1997) ("When a complaint refers to a document and the document is central to the plaintiff's claim, the plaintiff is obviously on notice of the document's contents, and th[e] rationale for conversion to summary judgment dissipates."). CDOC Defendants therefore respectfully request this Court take judicial notice of Exhibits A-G as public court records.

## IV.    ARGUMENT

### A.  Mr. Abu-Natambu-El's Eighth Amendment claims against all CDOC Defendants should be dismissed in part.

Mr. Abu-Natambu-El raises several Eighth Amendment claims against CDOC Defendants. Only one alleges facts that could entitle him to relief and so the rest should be dismissed. First, his wrongful incarceration claim in Claim One fails because the district court with jurisdiction over his criminal charges ordered his continued incarceration after his convictions were vacated. CDOC Defendants cannot be held liable for complying with that lawful order. Next, Mr. Abu-Natambu-El's allegations in Claim Four related to inmate White threatening him with a knife in September of 2019 are time barred. Finally, Mr. Abu-Natambu-El's assertions that Dorcey, Long, and Custer did not adequately supervise subordinates in Claims Two, Three, and Five do not adequately allege an affirmative link between those Defendants and a constitutional injury. Nor does the Amended Complaint adequately allege that

Mr. Abu-Natambu-El's injuries were caused by a policy or practice implemented or enforced by any of the CDOC Defendants. For these reasons, all of Mr. Abu-Natambu-El's Eighth Amendment claims against CDOC Defendants should be dismissed, with the exception of the claim arising from allegations that CDOC Defendants failed to protect him from the alleged assault by inmate Cummings.

Under the Eighth Amendment, "prison officials must ensure that inmates receive adequate food, clothing, shelter, and medical care, and must 'take reasonable measures to guarantee the safety of the inmates.'" *Farmer v. Brennan*, 511 U.S. 825, 832 (1994) (quoting *Hudson v. Palmer*, 468 U.S. 517, 526-27 (1984)). "[P]rison officials have a duty [under the Eighth Amendment] to protect prisoners from violence at the hands of other prisoners." *Brennan*, 511 U.S. at 833 (quoting *Cortes–Quinones v. Jimenez–Nettleship*, 842 F.2d 556, 558 (1st Cir. 1988) (internal quotation marks and citation omitted); *see also Wilson v. Seiter*, 501 U.S. 294, 303 (1991) (describing "the protection [an inmate] is afforded against other inmates" as a "conditio[n] of confinement" subject to the strictures of the Eighth Amendment).

It is not, however, every injury suffered by one prisoner at the hands of another that translates into constitutional liability for prison officials responsible for the victim's safety. *Brennan*, 511 U.S. at 834. To allege a violation of the Eighth Amendment, an inmate must show (1) "that the conditions of his incarceration present an objective substantial risk of serious harm"; and (2) "prison officials had subjective knowledge of the risk of harm." *See id.; see also Howard v. Waide*, 534 F.3d 1227, 1236 (10th Cir. 2008). For the second element, "an official must both be aware of the facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Howard* 534 F.3d at 1236.

**1. Mr. Abu-Natambu-El's false imprisonment claims under the Eighth Amendment fail because the Jefferson County District Court ordered continued incarceration.**

Mr. Abu-Natambu-El alleges that Long, Dick, Coonrod-Brown, and Peil falsely imprisoned him in violation of the Fifth Amendment and Eighth Amendment because they were aware of the Colorado Supreme Court order reversing his convictions but chose to hold him at SCF. ECF No 14, p. 5. Because of this failure to release Mr. Abu-Natambu-El from CDOC custody, he alleges that he was stabbed ten times by inmate Cummings on February 11, 2020. *Id.*

In the Tenth Circuit, imprisonment beyond one's term can constitute cruel and usual punishment for purposes of the Eighth Amendment. *Mitchell v. N.M. Dep't of Corrs.*, 1993 WL 191810 at *3 (10th Cir. June 1, 1993) (unpublished) (citing *Sample v. Diecks*, 885 F.2d 1099, 1108-10 (3d Cir. 1993)). To make out such a claim, a plaintiff must show 1) the prison official had knowledge of the prisoner's problem and thus of the risk that unwarranted punishment was being, or would be, inflicted; 2) the official either failed to act or took only ineffectual action under circumstances indicating that his or her response to the problem was a product of deliberate indifference to the prisoner's plight; and 3) a causal connection between the official's response to the problem and the infliction of the unjustified detention. *See Sample*, 885 F.2d at 1110; *Haygood v. Younger*, 769 F.2d 1350, 1354 (9th Cir. 1985). Mr. Abu-Natambu-El cannot show that Long, Dick, Coonrod-Brown or Peil caused him to wrongfully remain in CDOC custody because the District Court for Jefferson County, which had jurisdiction over his criminal case, ordered his continued incarceration after the Colorado Supreme Court overturned his convictions. *See generally*, **Exhibits A-G.**

Mr. Abu-Natambu-El alleges that the Colorado Supreme Court overturned his convictions and mandated his release in *People v. Abu-Nantambu-El*, 454 P. 3d 1044 (Colo. 2019). *See,* ECF No. 14, p. 1. These allegations, however, are not entitled to the presumption of truth, because records in that case show that while the Colorado Supreme Court did reverse Mr. Abu-Natambu-El's convictions, it did not mandate his release. *Compare, Adbu-Natambu-El*, 454 P. 3d at 1052; **Exhibit A** (Mandate in *People v. Abu-Natambu-El,* Case No. 2018SC44 (Colo. Jan. 15, 2020)); *with Corrigan v. Bd. of Trs. of Metro. State Univ. of Denver*, No. 19-cv-02475, 2020 WL 3567049, at *5 (D. Colo. July 1, 2020) (When reviewing the sufficiency of a complaint, if a properly-considered document outside the pleadings "contains facts contradicting the allegations of a complaint, a court is no longer required to treat the complaint's allegations as well-pleaded facts that are true."); *Brokers Choice of Am., Inc. v. NBC Universal, Inc.*, 861 F.3d 1081, 1105 (10th Cir. 2017) ("[A]lthough we accept all well-pleaded allegations as true and draw all reasonable inferences in favor of the plaintiff, if there is a conflict between the allegations in the complaint and the content of the attached exhibit, the exhibit controls.").

Similarly, the Colorado Court of Appeals remanded the case back to the district court for a new trial in 12CR2275, Jefferson County. *See, People v. Abu-Natambu-El*, 457 P. 3d 648, 656 (Colo. App. 2017); *see also* **Exhibit B** (Mandate in *People v. Abu-Natambu-El,* Case No. 2014CA1234 (Colo. App. Feb. 10, 2020)). At no point did either the Colorado Court of Appeals or the Colorado Supreme Court mandate Mr. Abu-Natambu-El's release, and a review of the dockets in Case Nos. 2014CA1234 and 2018SC44 show that Mr. Abu-Natambu-El's post-vacation release was not raised with either court. *See generally* **Exhibits A-G**.

A few months after the Supreme Court issued its mandate, the district court issued a Notice to Jail in 12CR2275, Jefferson County, alerting CDOC to continue to hold Mr. Abu-Natambu-El with no bond. **Exhibit C.** Mr. Abu-Natambu-El then moved for a hearing to set a reasonable bond in 12CR2275, Jefferson County. **Exhibits D-F**.[2]  The Jefferson County district court ultimately decided not to hold a bail hearing and Mr. Abu-Natambu-El remained incarcerated at CDOC until he was transferred to Jefferson County as a pre-trial detainee. **Exhibit G**; ECF No. 14, p. 5.

The above court filings, which this Court can take judicial notice of as public court records, show that the district court in 12CR2275, Jefferson County, ordered Mr. Abu-Natambu-El's continued incarceration and denied him bail. It does not appear Mr. Abu-Natambu-El appealed the district court's denial of bail, nor did he file a habeas corpus petition. Mr. Abu-Natambu-El therefore cannot show that Long, Dick, Coonrod-Brown, or Peil were the cause of Mr. Abu-Natambu-El's wrongful confinement after the Colorado Supreme Court vacated his convictions, because he was never wrongfully confined. Mr. Abu-Natambu-El fails to allege a claim for wrongful confinement in violation of the Eighth Amendment, and that portion of the Amended Complaint should be dismissed.

> ### 2. Mr. Abu-Natambu-El's Eighth Amendment claims arising from the September 2019 incident with inmate White are time barred.

---

[2] Mr. Abu-Natambu-El's brief in support of restoring rights to a bail hearing and his reply related to that motion are protected, as is the district court's brief in support of vacating the bond hearing, and so cannot be accessed by undersigned counsel.

Mr. Abu-Natambu-El alleges that Dorcey, Barnes, Peil, Custer, Bedsaul, and Coonrod-Brown failed to adequately protect him from, or respond to, claims that inmate Martel White threatened him with a knife in September of 2019. ECF No. 14, pp. 6-7 (Claim 2); 10-11 (Claim 4); 18 (Claim 6). These claims are time barred because he brings these claims over two years after the incident occurred.

Mr. Abu-Natambu-El's 42 U.S.C. §1983 claims are governed by the two-year statute of limitations contained in §13-80-102, C.R.S. *Ervin v. Wilson,* No. 12-cv-02602, 2014 WL 7927494 at *6 (D. Colo. Aug. 13, 2014) (citing *Workman v. Jordan*, 32 F. 3d 475, 482 (10th Cir. 1994)); *Merrigan v. Affiliated Bankshares of Colo., Inc.*, 775 F. Supp. 1408, 1411-12 (D. Colo. 1991) *report and recommendation adopted in part sub nom. Ervin v. Health Servs. Adm'r Keller,* No. 12-cv-02602, 2015 WL 847475 (D. Colo. Feb. 25, 2015).

Mr. Abu-Natambu-El mailed his Complaint on February 10, 2022, and this action was filed with this Court on February 14, 2022. *See* ECF No. 1; 1-1. Mr. Abu-Natambu-El alleges that the incident with inmate White took place in September 2019, so the statute of limitations to bring such claims expired, at latest, the end of September 2021. *Id.* at p. 10; *see also Ervin,* 2014 WL 7927494 at *6. Mr. Abu-Natambu-El failed to bring claims related to threats made by inmate White before the statute of limitations expired, so his Eighth Amendment claims related to this incident should be dismissed.

### 3. The Eighth Amendment "failure to supervise" claims are not sufficiently pleaded.

Mr. Abu-Natambu-El claims that Dorcey, Long, and Custer personally participated in a failure to protect him from the attack on inmate Cummings, among other claims, however, he

also appears to allege an independent claim that their failure to supervise subordinates led to his constitutional injuries. *See* ECF No. 14 at pp. 7 (Dorcey failed to properly supervise officers who told Mr. Abu-Natambu-El to deal with threats on his life and property on his own); 8-9 (Long failed to adequately train or supervise his subordinates); 15 (Custer failed to supervise the other correction officers present under his command and supervision). These supervisory claims fail because Mr. Abu-Natambu-El fails to allege an "affirmative link" between the CDOC Defendant's supervisory duties and any constitutional injury he suffered.

"Individual liability under § 1983 must be based on personal involvement in the alleged constitutional violation." *Foote v. Spiegel*, 118 F.3d 1416, 1423 (10th Cir.1997). A plaintiff must show that each named defendant was personally responsible for a deprivation of his constitutional rights. *See Kentucky v. Graham*, 473 U.S. 159, 166 (1985). Further, vague and conclusory allegations of personal participation are insufficient to state a claim for relief. *Gray v. Sorrels*, 744 F. App'x 563, 568 (10th Cir. 2018). Rather, a plaintiff demonstrates that a defendant personally participated in an alleged violation only if the plaintiff establishes there is an "affirmative link" between the defendant's conduct and the described violation. *Stidham v. Peace Officer Stds. & Training*, 265 F.3d 1144, 1156-57 (10th Cir. 2001).

An inmate's § 1983 claim under the Eighth Amendment for failure to protect can only succeed if the plaintiff shows "personal involvement or participation in the incident" on the part of the defendant prison official. *McDaniels v. McKinna*, 96 F. App'x 575, 579-80 (10th Cir. 2004) (*citing Grimsley v. MacKay*, 93 F.3d 676, 679 (10th Cir. 1996)).  An official's supervisory status alone does not create § 1983 liability. *Gallagher v. Shelton*, 587 F.3d 1063, 1069 (10th Cir. 2009). "[A] supervisor is not liable under §1983 for the actions of a subordinate unless an

affirmative link exists between the constitutional deprivation and either the supervisor's personal participation or his failure to supervise…" *Davis v. Arkansas Valley Correctional Facility*, 99 Fed. Appx. 838, 843 (10th Cir. 2004) (finding that copying the warden with correspondence outlining his complaints about medical care, without more, did not sufficiently implicate the warden under §1983); *Benglen v. Zavaras*, 7 F. Supp. 2d 1171, 1174 (D. Colo. 1998) (allegations that defendant knew prison facility was substandard, with inadequately trained personnel, was not enough to support supervisory liability against defendant).

Mr. Abu-Natambu-El's allegations are not enough to show an affirmative link between Dorcey, Long and Custer's supervisory responsibilities and the claimed constitutional injury because they do not allege what actions these defendants took, or failed to take, in their supervisory roles that led to Mr. Abu-Natambu-El's constitutional injury. For example, he does not allege that Dorcey, Long, or Custer knew of a specific threat from inmate Cummings on February 11, 2020, or that he planned to attack Mr. Abu-Natambu-El. Instead, he relies on allegations that Cummings had an animus against Muslims that were also LGBTQ. *See e.g.,* ECF No. 14, p. 8. These allegations alone do not establish an affirmative link between the Cummings assault and Dorcey, Long, or Custer's supervisory conduct. In the absence of such a link, Mr. Abu-Natambu-El's §1983 claims premised on these defendants' failure to supervise their subordinates should be dismissed.

### 4. The Eighth Amendment claim based on a failure to implement policies is not sufficiently pleaded.

Mr. Abu-Natambu-El also alleges an independent claim that Dorcey, Long, and Custer failed to enforce sufficient policies to protect him from inmate Cummings. ECF No. 14, pp 6

(Dorcey failed to enforce policies and act upon Mr. Abu-Natambu-El's cries for help…); 8 (Long had policies and procedures in effect that failed to reasonably protect Mr. Abu-Natambu-El); 15 (Custer failed to implement and enforce policies to protect plaintiff). To plead supervisory liability for failure to implement or promulgate sufficient policies and procedures, Mr. Abu-Natambu-El must allege 1) the defendant promulgated, created, implemented or possessed responsibility for the continued operation of a policy that; 2) caused the complained of constitutional harm; and 3) acted with the state of mind required to establish the alleged constitutional deprivation. *Smith v. Allbaugh*, 987 F. 3d 905, 911 (10th Cir. 2021) (citing *Brown v. Montoya*, 662 F. 3d 1152, 1163-64 (10th Cir. 2011). None of these elements are satisfied by the Amended Complaint. Further, the violation of a prison policy does not, by itself, support an Eighth Amendment claim absent evidence the prison official's conduct failed to conform to the constitutional standard. *See Porro v. Barnes*, 624 F.3d 1322, 1329 (10th Cir. 2010).

Mr. Abu-Natambu-El's claim for failure to enforce policies should be dismissed because he does not identify a specific policy promulgated by Dorcey, Long, and Custer that caused the alleged assault. In order to state a claim for relief, a plaintiff must assert "more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Iqbal*, 556 U.S. at 678; *see also Pahls v. Thomas*, 718 F.3d 1210, 1226 (10th Cir. 2013) (A plaintiff must identify *specific* actions taken by *particular defendants* in order to plead a viable § 1983 claim). Mr. Abu-Natambu-El's conclusory allegations that these defendants failed to enforce policies to protect him, without identifying a specific policy, or how it was violated, is not sufficient to show that specific actions taken (or not taken) by these defendants led to his constitutional injury.

In order to show the requisite causal connection, the plaintiff must allege that the "'the defendant set in motion a series of events that the defendant knew or reasonably should have known would cause others to deprive the plaintiff of [his] constitutional rights.'" *Dodds*, 614 F.3d at 1195-96, quoting *Poolaw v. Marcantel*, 565 F.3d 721, 732-33 (10th Cir. 2009)). As discussed above, Mr. Abu-Natambu-El does not allege any facts to indicate that Dorcey, Long, or Custer had any knowledge of specific threats from inmate Cummings on February 11, 2020, or that they knew or should have known Plaintiff would be deprived of his constitutional rights. Therefore, any claims that Dorcey, Long, and Custer failed to implement or promulgate policies that led to Mr. Abu-Natambu-El's constitutional injuries should be dismissed.

### B. Mr. Abu-Natambu-El fails to adequately allege a Fourteenth Amendment claim against any of the CDOC Defendants.

Mr. Abu-Natambu-El fails to allege a Fourteenth Amendment Due Process or Equal Protection claim against any of the CDOC Defendants where 1) he received due process in 12CR2275, Jefferson County; and 2) he does not identify any similarly situated prisoners that were treated differently than he was.

#### 1. Mr. Abu-Natambu-El received due process in his Jefferson County criminal case that led to his continued incarceration.

Mr. Abu-Natambu-El asserts a due process claim against Long, Dick, Coonrod-Brown, and Peil for failure to release him from CDOC custody once the Colorado Supreme Court overturned his convictions. ECF No. 14, p. 5. While Mr. Abu-Natambu-El characterizes this claim as a Fifth Amendment claim, his allegations of false imprisonment are better characterized as a claim for violations of his Fourth and Fourteenth Amendment rights, for the reasons discussed below. *See Hilton v. Graves*, No. 17-cv-1431, 2018 WL 4473546, at *9 (D. Colo. June 27, 2018, report and

recommendation adopted, No. 17-CV-01431, 2018 WL 4467287 (D. Colo. Sept. 18, 2018) (citing *Mondragon v. Thompson*, 519 F. 3d 1078, 1082 (10th Cir. 2008); *see also* ECF No. 18, p. 3 (referring to this claim as a Fourteenth Amendment Due Process claim).

The Tenth Circuit has explained that a false arrest or imprisonment claim pursuant to §1983 is appropriate when a person has been imprisoned without legal process. *Hilton*, 2018 WL 4473546, at *9. This type of claim arises under the Fourth Amendment after an unlawful arrest and before the institution of legal process. *Id.* Once the plaintiff is released, or when the imprisonment is pursuant to legal process, then the proper claim is for malicious prosecution under the Fourteenth Amendment. *Id.* To state a claim for false imprisonment, a plaintiff must show: 1) the defendant has deprived him of a right secured by the "Constitution and laws" of the United States; and 2) the defendant deprived him of this constitutional right "under color of any statute, ordinance, regulations, custom, or usage, of any State or Territory." *Id.* (citing *Smith v. Plati,* 258 F. 3d 1167, 1175 (10th Cir. 2001). The second element requires the plaintiff show that the defendant acted "under color of law." *Id.*

Mr. Abu-Natambu-El fails to show that Long, Dick, Coonrod-Brown, and Peil have deprived him of a liberty interest secured by the Fourteenth Amendment. Mr. Abu-Natambu-El received due process in 12CR2275, Jefferson County when he requested, and was denied, a bail hearing after the Colorado Supreme Court vacated his previous convictions. *See* Section IV(A)(1), *supra*; **Exhibits C-G**. Mr. Abu-Natambu-El does not allege that Long, Dick, Coonrod-Brown, and Peil had any involvement or authority in the decision for the District Court of Jefferson County to either deny him a bail hearing or order his continued confinement.

Therefore, he has not made the required showing that Defendants Long, Dick, Coonrod-Brown, and Peil deprived him of a protected liberty interest, and this claim should be dismissed.

### 2. Mr. Abu-Natambu-El's class of one Equal Protection claim fails because he does not allege that he was treated differently from similarly situated inmates.

Mr. Abu-Natambu-El alleges that the CDOC Defendants violated his Equal Protection rights by taking discriminatory or retaliatory actions against him based on his race, religion, and sexual orientation. ECF No. 14, pp. 7 (Claim 2); 9 (Claim 3); 11 (Claim 4); 17 (Claim 5); 20 (Claim 6). However, his claim fails because he has not alleged that he has been treated differently than similarly situated inmates.

The Equal Protection Clause of the Fourteenth Amendment forbids states from "deny[ing] to any person within [their] jurisdiction the equal protection of the laws." U.S. Const. amend. XIV § 1. This "is essentially a direction that all persons similarly situated should be treated alike." *City of Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432, 439 (1985). Thus, to assert a viable equal protection claim, "plaintiffs must first make a threshold showing that they were treated differently from others who were similarly situated to them." *Gehl Group v. Koby*, 63 F.3d 1528, 1538 (10th Cir. 1995). To be similarly situated, a plaintiff's position "must be identical to the comparators 'in all relevant respects,' a particularly fact-intensive inquiry." *303 Creative LLC v. Elenis*, 385 F. Supp. 3d 1147, 1154 (D. Colo. 2019) (quoting *Grissom v. Roberts*, 902 F.3d 1162, 1173 (10th Cir. 2018); *Ebonie S. ex. rel. Mary S. v. Pueblo School Dist. 60*, 819 F. Supp. 2d 1179, 1189 (D. Colo. 2011) (quoting *U.S. v. Moore*, 543 F.3d 891 (7th Cir. 2008) ("[t]o be 'similarly situated,' the individuals 'must be prima facie identical in all relevant respects or directly comparable in all

material respects; although this is not a precise formula, it is nonetheless clear that similarly situated individuals must be very similar indeed'").

Mr. Abu-Natambu-El offers no similarly situated inmates who were treated differently than he was, which are two essential elements to state a plausible equal protection claim. *See e.g., Gehl*, 63 F.3d at 1538. His Amended Complaint appears to suggest that his request to be reassigned to a different housing unit was denied on the basis of his race, religion, and sexual orientation. ECF No. 14 at 7. At the same time, he acknowledges that other members of those same suspect classes were reassigned to different housing units under similar circumstances. *Id.* ("[O]ther LGPTQ inmates were not treated this way and were frequently moved to other units, pods, or facilities for safety, and protected after such threats, danger, and harassment . . ."). Thus, the allegations in the Amended Complaint present a "class of one" theory of liability – where the claimant alleges that he or she is the only individual subjected to disparate treatment.

To assert an equal protection claim as a class of one, a plaintiff must "demonstrate others 'similarly situated in all material respects' were treated differently and that there is no objectively reasonable basis for the defendant's actions." *Kan. Penn Gaming, LLC v. Collins*, 656 F.3d 1210, 1217 (10th Cir. 2011). Courts have approached these class-of-one equal protection claims "with caution, wary of 'turning even quotidian exercises of government discretion into constitutional causes.'" *Id*. at 1216 (quoting *Jicarilla Apache Nation v. Rio Arriba Cnty.*, 440 F.3d 1202, 1209 (10th Cir. 2006)). As the Tenth Circuit has explained, "the concept of a class-of-one equal protection claim could effectively provide a federal cause of action for review of almost every executive and administrative decision made by state actors." *Jennings v. City of Stillwater*, 383 F.3d 1199, 1210-11 (10th Cir. 2004). "These concerns are magnified with

challenges to low-level government decision-making, which often involves a great deal of discretion. . . . If even innocuous inconsistencies gave rise to equal protection litigation, government action would be paralyzed." *Kan. Penn Gaming*, 656 F.3d at 1216-17. Accordingly, "class-of-one claims are rarely successful and plaintiffs must meet exacting standards to prevail." *Oakley v. Raemisch*, Civil Action No. 14-cv-0300-CMA-MJW, 2017 WL 3425107, at *4 (Aug. 8, 2017).

Here, Mr. Abu-Natambu-El has not alleged that all inmates who identify as LGTBQ are denied new housing assignments when they assert that their safety is in jeopardy. Instead, he asserts that he is being treated differently *from other LGBTQ inmates.* But he has not alleged that these other LGBTQ inmates were similarly situated in all material respects. In fact, Mr. Abu-Natambu-El has not alleged that he was treated differently from any similarly situated inmates, or that such treatment was irrational or unrelated to legitimate state activity. Therefore, Mr. Abu-Natambu-El's Equal Protection claim should be dismissed.

## C.  Mr. Abu-Natambu-El fails to adequately allege facts to support a 42 U.S.C. §1985 claim for conspiracy against the CDOC Defendants.

Mr. Abu-Natambu-El alleges that the CDOC Defendants were acting in concert to deprive him of his constitutional rights because of his race, religion, and sexual orientation. ECF No. 14, pp. 7 (Claim 2); 9 (Claim 3); 11 (Claim 4); 17 (Claim 5); 20 (Claim 6).

To state a cognizable conspiracy claim, the plaintiff must allege specific facts showing agreement and concerted action among the defendants. *Hunt v. Bennett*, 17 F.3d 1263, 1266 (10th Cir. 1994). Conclusory allegations of conspiracy are insufficient to state a claim. *Id.* The plaintiff must demonstrate direct or circumstantial evidence of agreement, such as a sequence of

events from which a reasonable jury could infer that there was a meeting of the minds. However, there must be specific factual allegations to support such an assertion. *Merritt v. Hawk*, 153 F. Supp.2d 1216, 1225 (D. Colo. 2001).

Moreover, there must be an allegation of specific facts showing concerted action among the alleged co-conspirators. *Dixon v. City of Lawton, Okl*, 898 F.2d 1443, 1449 (10th Cir. 1990); *Tonkovich v. Kansas Bd. of Regents*, 159 F.3d 504, 533 (10th Cir. 1998). Finally, in addition to agreement and concerted action, the plaintiff must show that the conspiracy's goal was to deprive the plaintiff of a right secured by the Constitution. *Dixon*, at 1449. The conspiracy must involve a design "to deprive a plaintiff of a constitutional or federally protected right under color of state law." *Id.* at 1449 n. 6.

Mr. Abu-Natambu-El fails to allege any specific facts showing concerted action amongst these alleged co-conspirators and, instead, relies on the threadbare, conclusory allegation that CDOC Defendants were conspiring against him. *Id.* Because this is not enough to show a meeting of the minds between the CDOC Defendants to deprive Mr. Abu-Natambu-El of his constitutional rights, or that the CDOC Defendants took any action in furtherance of such conspiracy, such claims should be dismissed against all CDOC Defendants.

### D. Mr. Abu-Natambu-El's 42 U.S.C. §1986 claim is time barred.

Mr. Abu-Natambu-El alleges CDOC Defendants conspired against him because of his race, religion, and sexual orientation in violation of 42 U.S.C. §1986. ECF No. 14, pp. 7 (Claim 2); 9 (Claim 3); 11 (Claim 4); 17 (Claim 5); 20 (Claim 6).

A claim under §1986 is governed by a one-year statute of limitations. *See* 42 U.S.C. §1986 ("no action under the provisions of this section shall be sustained which is not

commenced within one year after the cause of action has accrued."); *Jemaneh v. University of Wyoming*, No. 12-cv-02383, 2013 WL 8372242, at *3 (D. Colo. Apr. 10, 2013).

Mr. Abu-Natambu-El alleges various injuries from this conspiracy, including the unlocking of his cell door, and failing to protect him from inmate White in September of 2019 and Cummings in February of 2020. *See, e.g. Id.* at pp. 10-11; 14-15. As previously discussed, Mr. Abu-Natambu-El sent his Complaint on February 10, 2022, and this action was filed with this Court on February 14, 2022. *See* ECF No. 1; 1-1. Because all events in the Amended Complaint transpired before February of 2021, Mr. Abu-Natambu-El is outside the one-year statute of limitations to bring a §1986 claim and this claim should be dismissed.

### E. CDOC Defendants are entitled to qualified immunity.

When a defendant asserts qualified immunity, the plaintiff bears a heavy two-part burden of proof. *Davis v. Scherer*, 468 U.S. 183, 197 (1984); *DeSpain v. Uphoff*, 264 F.3d 965, 971 (10th Cir. 2001). To overcome qualified immunity, the plaintiff must show: (1) defendant violated plaintiff's federal constitutional or statutory right; and (2) the right was clearly established at the time of the violation in the circumstances faced by the defendant. *See Reynolds v. Powell*, 370 F.3d 1028, 1030 (10th Cir. 2004). "If the plaintiff fails to satisfy either part of the two-part inquiry, the court must grant the defendants qualified immunity." *Gross v. Pirtle*, 245 F.3d 1151, 1156 (10th Cir. 2001).

In discussing qualified immunity, the Supreme Court explained "[a] Government official's conduct violates clearly established law when, at the time of the challenged conduct, '[t]he contours of [a] right [are] sufficiently clear' that every 'reasonable official would have understood that what he is doing violates that right.'" *Ashcroft v. al-Kidd*, 131 S. Ct. 2074, 2083

(U.S. 2011) (citing *Anderson v. Creighton*, 483 U.S. 635, 640 (1987)). "We do not require a case directly on point, but existing precedent must have placed the statutory or constitutional question beyond debate." *Id.* (citing *Malley v. Briggs*, 475 U.S. 335, 341 (1986). The Supreme Court recently affirmed this principle in *Stanton v. Sims*, 134 S.Ct. 3, 4 (2013), noting that the purpose of qualified immunity is to give government officials "breathing room" to make reasonable but mistaken judgments, so long as their actions are not plainly incompetent. *Id.* Indeed, qualified immunity applies in "all but the most exceptional cases," *Tonkovich v. Kansas Bd. of Regents*, 159 F.3d 504, 516 (10th Cir. 1998), and protects "all but the plainly incompetent or those who knowingly violate the law." *Malley v. Briggs*, 475 U.S. 335, 341 (1986).

As to the first element, as discussed above, Mr. Abu-Natambu-El fails to state a viable claim for the violation of his constitutional rights under the Fourteenth Amendment, or under the Eighth Amendment for claims that CDOC Defendants failed to supervise subordinates or properly implement policies. See, Sections IV(A)-(B), *supra*. In the interests of brevity, CDOC Defendants will not repeat those arguments here, but incorporate them by reference. As to the second element, Mr. Abu-Natambu-El cannot show that CDOC Defendants violated a clearly established right under these amendments where he fails to sufficiently allege sufficient facts to support the underlying claims. *See Montoya v. Vigil*, 898 F.3d 1056, 1064 (10th Cir. 2018) ("It is true that if the plaintiff failed to state a claim under Rule 12(b)(6), the government would also be entitled to qualified immunity."). Therefore, CDOC Defendants are entitled to qualified immunity.

### F.  Mr. Abu-Natambu-El's remaining allegations

This Court allowed Mr. Abu-Natambu-El's El's Fourteenth Amendment due process and equal protection claims, the Eighth Amendment claims, and the claims under §§1985 and 1986 to move forward. *See* ECF No. 18, p. 12. Mr. Abu-Natambu-El also asserts allegations that Dorcey, Barnes, Peil, Custer, Bedsaul, and Coonrod-Brown failed to adequately safeguard his property when they failed to stop correctional officers from leaving his cell unlocked, which allowed other inmates to steal his property. ECF No. 14, pp. 6 (Claim 2); 10-11 (Claim 4); 18 (Claim 6). Mr. Abu-Natambu-El also alleges that Barnes, Peil, Custer, and Bedsaul put him in segregation causing him to lose his property, job, and cell assignment. *Id.* at p. 12.

These allegations do not appear to bring any cognizable claims under the Eighth or Fourteenth Amendment and so are not addressed herein. Even if one liberally construes these allegations into a Fourteenth Amendment due process "takings" claim, such claim is barred because there is an adequate state remedy under the Colorado Governmental Immunity Act. *See*, *Durre v. Dempsey*, 869 F.2d 543, 546 (10th Cir. 1989) (upholding district court's dismissal of a takings claim based on available state remedy at § 24-10-106(1)(b), C.R.S.); *Bertolo v.* Benezee, No. 11-cv-02822, 2012 WL 7801111, at *5 (D. Colo. Nov. 14, 2014) ("The due process clause is not implicated in negligent or intentional takings of an inmate's property where an adequate state post-deprivation remedy is available… Colorado has provided such a remedy in section 24-10-106(1)(b).") (citing *Hudson* and *Durre*), <u>report and recommendation adopted,</u> No. 11-CV-2822-WJM, 2013 WL 1189508 (D. Colo. Mar. 22, 2013), <u>aff'd,</u> 601 F. App'x 636 (10th Cir. 2015). If this Court construes this these allegations into a cognizable claim, then CDOC Defendants will respond to such claim, as appropriate.

**CONCLUSION**

WHEREFORE, CDOC Defendants respectfully requests this Court grant the Motion to Dismiss the Amended Complaint pursuant to Fed. R. Civ. P. 12(b)(6).

Respectfully submitted on October 10, 2022.

PHILIP J. WEISER
Attorney General

/s/ *Christopher Van Hall*
CHRISTOPHER VAN HALL*
Assistant Attorney General
PHIL BARRETT
Assistant Attorney General
1300 Broadway, 10th Floor
Denver, Colorado, 80203
Telephone: 720-508-6563
FAX: 720-508-6032
E-Mail: Christopher.VanHall@coag.gov
E-Mail 2: Phil.Barrett@coag.gov
*Counsel of Record

**CERTIFICATE OF SERVICE**

This is to certify that on ***October 10, 2022,*** I have duly served **MOTION TO DISMISS**

**SECOND AMENDED COMPLAINT PURSUANT TO FED. R. CIV. P. 12(B)(1) AND**

**12(B)(6)** upon all parties herein by e-filing with the CM/ECF system maintained by the court and

by depositing same in the United States mail, postage prepaid, at Denver, Colorado, on ***October***

***11, 2022***, addressed as follows:

Abdu-Latif K. Abu-Natambu-El, #58076          Adrienne Sanchez, Associate Director of
Fremont Correctional Facility                              Legal Services, CDOC
PO Box 999
Unit 2
Canon City, CO 81215-0600
*Plaintiff Pro Se*

                                                                          */s/ Laressa Gonzalez & Mariah Cruz-Nanio*